UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DIRECTORS OF THE MOTION PICTURE
INDUSTRY PENSION PLAN AND
DIRECTORS OF THE MOTION PICTURE
INDUSTRY HEALTH PLAN,

          Plaintiffs,

     vs.

FILMS IN MOTION, LLC, NTF
PRODUCTIONS, LLC, CARJACKED
ENTERTAINMENT, LLC, and BLOODOUT
PRODUCTIONS, LLC,

          Defendants.

Case No. 17-cv-10037 (RA)

## PLAINTIFFS' MEMORANDUM OF LAW
## IN SUPPORT OF DEFAULT JUDGMENT

Gillian Costello
SPIVAK LIPTON LLP
1700 Broadway, 21st Floor
New York, NY 10019
Tel:  (212) 765-2100
Fax:  (212) 541-5429

*Attorneys for Plaintiffs*

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ........................................................................................................ iii

PRELIMINARY STATEMENT .................................................................................................. 1

SUMMARY OF FACTS ............................................................................................................. 2

   i.   Films in Motion: "Various Titles" ..................................................................................... 2

   ii.  "Nothing to Fear" ............................................................................................................. 4

   iii. "Carjacked" ..................................................................................................................... 6

   iv. "Bloodout" ....................................................................................................................... 8

ARGUMENT .............................................................................................................................. 11

   I.   Default Judgment Should Be Granted Pursuant to FRCP 55(b) ........................................ 11

      1.   Default Has Been Entered Under Federal Rule 55(a) .................................................... 11

      2.   Plaintiffs' Application for Entry of a Default Judgment Under Federal
          Rule 55(b) Should be Granted ...................................................................................... 11

   II.  The Court May Determine Damages Without a Hearing .................................................. 12

   III. The Categories of Damages Sought ................................................................................. 14

      a.   Delinquent Contributions ............................................................................................. 14

      b.   Interest ......................................................................................................................... 16

      c.   Liquidated Damages .................................................................................................... 17

      d.   Costs and Attorneys' Fees ........................................................................................... 18

CONCLUSION ........................................................................................................................... 22

# TABLE OF AUTHORITIES

**Cases**                                                                                                        **Page**

Action S.A. v. Marc Rich & Co., Inc.,
    951 F.2d 504 (2d Cir. 1991)...................................................................................................12

Alfano v. CIGNA Life Ins. Co. of N.Y.,
    2009 U.S. Dist. LEXIS 28118 (S.D.N.Y. April 2, 2009)...........................................................20

Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany,
    522 F.3d 182 (2d Cir. 2008) ....................................................................................................18

Arnone v. CA, Inc.,
    2009 U.S. Dist. LEXIS 17080 (S.D.N.Y. Mar. 6, 2009).............................................................20

Barnes v. Am. Int'l Life Assurance Co.,
    2010 U.S. Dist. LEXIS 27606 (S.D.N.Y. Mar. 16, 2010) ........................................................19

Bleecker Charles Co. v. 350 Bleecker St. Apt. Corp.,
    212 F. Supp. 2d 226 (S.D.N.Y. 2002)......................................................................................19

Blum v. Stenson,
    465 U.S. 886, 104 S. Ct. 1541 (1984)......................................................................................19

Chloe v. Zarafshan,
    2009 U.S. Dist. Lexis 84133 (S.D.N.Y. July 16, 2009),
    report and recommendation adopted,
    2009 U.S. Dist. Lexis 84255 (S.D.N.Y. Sept. 14, 2009) ..........................................................13

Clark v. First Unum Life Ins. Co.,
    2009 U.S. Dist. LEXIS 36054 (S.D.N.Y. April 28, 2009)..........................................................19

Crescent Publ'g Grp., Inc. v. Playboy Enters., Inc.,
    246 F.3d 142 (2d Cir. 2001)....................................................................................................19

Demonchaux v. United Healthcare Oxford,
    2014 U.S. Dist. LEXIS 43954 (S.D.N.Y. Mar. 27, 2014) ........................................................19

Estevez-Yalcin v. Children's Vill.,
    2007 U.S. Dist. Lexis 69511 (S.D.N.Y. Sept. 12, 2007) ..........................................................13

Finkel v. Romanowicz,
    577 F.3d 79 (2d Cir. 2009)......................................................................................................12

Fustok v. ContinCommodity Servs., Inc.,
    873 F.2d 38 (2d Cir. 1989)......................................................................................................12

Gesualdi v. Greenwood 2, Inc.,
    2014 U.S. Dist. Lexis 45795 (E.D.N.Y. Mar. 12, 2014) ..........................................................14

Int'l Ass'n of Heat & Frost Insulators v. Affiliated Envtl. Servs. NJ, Inc.,
    2017 U.S. Dist. Lexis 183909 (S.D.N.Y. Nov. 6, 2017) ..........................................................13

Microban Prods. Co. v. API Indus.,
    2014 U.S. Dist. LEXIS 92704 (S.D.N.Y. July 7, 2014) ..........................................................20

Millea v. Metro-North R.R. Co.,
    658 F.3d 154 (2d Cir. 2011) ....................................................................................................18

N.Y. Dist. Council of Carpenters Pension Fund v. Perimeter Interiors, Inc.,
    657 F. Supp.2d 410 (S.D.N.Y. 2009)...................................................................................19, 20

N.Y.C. Dist. Council of Carpenters Welfare Fund v. Quantum Constr.,
    2008 U.S. Dist LEXIS 124690 (S.D.N.Y. Sept. 4, 2008),
    adopted in relevant part sub nom.,
    N.Y.C. Dist. Council of Carpenters Pension Fund v. Quantum Constr.,
    2008 U.S. Dist. LEXIS 99179 (S.D.N.Y. Dec. 9, 2008) ..........................................................20

N.Y. State Teamsters Conference Pension & Ret. Fund v. Boening Bros., Inc.,
    92 F.3d 127 (2d Cir. 1996).......................................................................................................18

New York v. Green,
    420 F.3d 99 (2d Cir. 2005).......................................................................................................11

Perdue v. Kenny A. ex rel. Winn,
    559 U.S. 542, 130 S. Ct. 1662 (2010)......................................................................................18

Reiter v. MTA N.Y.C. Transit Auth.,
    457 F.3d 224 (2d Cir. 2006).....................................................................................................20

RLI Ins. Co. v. King Sha Group,
    598 F. Supp. 2d 438 (S.D.N.Y. 2009).......................................................................................13

SEC v. Yorkville Advisors, LLC,
    2015 U.S. Dist. LEXIS 24578 (S.D.N.Y. Feb. 27, 2015) ........................................................19

Taaffe v. Life Ins. Co.,
    769 F. Supp.2d 530 (S.D.N.Y. 2011)........................................................................................19

Trustees of the Sheet Metal Workers' Int'l Assoc. Local Union No. 28
Benefit Funds v. Metropolis Sheetmetal Contrs., Inc.,
   2015 U.S. Dist. Lexis 148942 (S.D.N.Y. Aug. 31, 2015),
   report and recommendation adopted,
   2015 U.S. Dist. Lexis 148932 (S.D.N.Y. Nov. 2, 2015) ..........................................................12

UFCW Local 174 Pension Fund v. Int'l Glatt Kosher Meat Processing Corp.,
   2018 U.S. Dist. Lexis 82734 (E.D.N.Y. May 15, 2018)...........................................................13

Underdog Trucking, L.L.C. v. Verizon Servs. Corp.,
   276 F.R.D. 105 (S.D.N.Y. 2011) ...............................................................................................20

Upstate N.Y. Eng'rs Health Fund v. FMC Demolition, Inc.,
   2015 U.S. Dist. Lexis 9524 (N.D.N.Y. Jan. 28, 2015) .............................................................14

Wang v. Societe Du Figaro S.A.,
   2018 U.S. Dist. Lexis 13119 (S.D.N.Y. Jan. 26, 2018)............................................................12


**Statutes and Other Authorities**
Employment Retirement Income Security Act,
   Section 502, 29 U.S.C. § 1132......................................................................................... 1-2, 14
   Section 502 (g)(2)(A), 29 U.S.C. § 1132 (g)(2)(A)..................................................................14
   Section 502 (g)(2)(B), 29 U.S.C. § 1132 (g)(2)(B) .................................................................16
   Section 502 (g)(2)(C), 29 U.S.C. § 1132 (g)(2)(C) .................................................................17
   Section 502 (g)(2)(D), 29 U.S.C. § 1132 (g)(2)(D) .................................................................18
   Section 515, 29 U.S.C. § 1145......................................................................................... 1-2, 14

Federal Rules of Civil Procedure
   Rule 55 ..................................................................................................................................11, 12

Labor Management Relations Act of 1947,
   Section 301, 29 U.S.C. § 185......................................................................................................1

Plaintiffs Directors of the Motion Picture Industry Pension Plan and Directors of the

Motion Picture Industry Health Plan (collectively, "Plaintiffs" or the "Plans") respectfully

submit this Memorandum of Law in support of Plaintiffs' motion for a default judgment against

Directors Films in Motion, LLC ("Films in Motion"), NTF Productions, LLC ("NTF"), and

Carjacked Entertainment, LLC ("Carjacked").[1]

## PRELIMINARY STATEMENT

The Defendants agreed to be bound by collective bargaining agreements ("CBAs") and

Plan Trust Agreements which required them to make certain contributions to the Plans in

accordance with the terms of those documents.  The Trust Agreements provide that the Plans

may conduct an audit of the books and records of signatory employers for determining the

accuracy of pension and health contributions to the Plans.  Audits conducted by the Plans

disclosed that the Defendants had not made all required contributions to the Plans.  The Plans

demanded payment for the amounts found owing pursuant to the audits, but the Defendants did

not make the required contributions.

Accordingly, the Plans brought this action pursuant to Section 301 of the Labor

Management Relations Act of 1947, as amended ("LMRA"), 29 U.S.C. § 185, for breach of

contract, and pursuant to Sections 502 and 515 of the Employee Retirement Income Security Act

---

[1] A default judgment is not sought against the remaining Defendant, Bloodout Productions, LLC ("Bloodout" or "Bloodout Productions"), because Plaintiffs have not been able to serve Bloodout with the Summons and Complaint.  However, a default judgment is sought against Defendant Films in Motion for the amounts that are sought in the lawsuit against Bloodout, because, as discussed below, Bloodout and Films and Motion are jointly and severally liable for such amounts.  (See also Declaration of Chris Tashchyan dated June 27, 2018 ¶ 9.)  Both Bloodout and Films in Motion executed the Project Agreement by which they agreed to be bound by the collective bargaining agreements and Trust Acceptance documents obligating them to make contributions to the Plans in accordance with the Plans documents.  (Tashchyan Decl. ¶ 9.)

of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1132, 1145, to collect unpaid contributions and other amounts to which the Plans are entitled pursuant to ERISA and the CBAs and Plan documents.

## SUMMARY OF FACTS

Defendant Films in Motion, on its own and in association with the other Defendant producer entities, executed a number of CBAs and Project Agreements with the International Alliance of Theatrical & Stage Employees ("IATSE") in which it agreed that certain motion picture productions would be covered by collective bargaining agreements and Plan documents that obligated the Films in Motion to make employee benefit contributions to the Plans in accordance with the terms of the CBAs and Plans documents. (See Declaration of Chris Tashchyan dated June 27, 2018 ("Tashchyan Decl.") Exs. 3, 5, 7, 9.) Defendants NTF, Carjacked, and Bloodout similarly executed such documents in association with Films in Motion. (See id., Exs. 5, 7, 9.)

     i.     Films in Motion: "Various Titles"

Films in Motion entered into various collective bargaining agreements with the IATSE and Trust Acceptances whereby it agreed to be bound by all terms and conditions of the Plans' Trust Agreements, including the obligation to make contributions to the Plans on behalf of each employee covered by the Agreements. (Tashchyan Decl. ¶¶ 12, 13 & Ex. 3.)

The Trust Agreements provide that the Plans may conduct an audit of the books and records of signatory employers for determining the accuracy of pension and health contributions to the Plans. (Tashchyan Decl. ¶ 8(B), Exs. 1 & 2.) The Plans conducted a payroll audit of Films in Motion's records for the period March 20, 2010 to April 9, 2011 for "Various Titles."

2

(Id.)  The Plans issued an audit report dated January 20, 2014 (the "January 20, 2014 audit")
identifying contribution obligations arising from work performed on various projects including
"The Courier" and "The Escapee."  (Id.)  This report found that $3,000.76 in unpaid
contributions was due for work performed by various employees, along with $1,103.60 in
interest, and $1,103.60 in liquidated damages, for a total of $5,207.96.  (Id., Ex. 4.)

Despite demand, Defendant Films in Motion has failed to pay the claim asserted by the
Plans.  Defendant Films in Motion has refused, and continues to refuse, to pay the amounts due
for unpaid contributions disclosed by the audit.  (Tashchyan Decl. ¶ 15.)

Despite demand, no payment has been received by the Plans from Films in Motion.
(Tashchyan Decl. ¶ 16.)  Therefore, interest on the unpaid contributions has continued to accrue
at the rate of one percent (1%) per month as provided in the Trust Agreements.  (Id.)  Defendants
Films in Motion owes additional interest calculated at the rate of 1% per month accrued since the
original audit report, through April 26, 2018, in the amount of $1,620.40.  (Id.)

As set forth in the Trust Agreements, liquidated damages are determined to be the greater
of twenty percent (20%) of the amount of contributions due, or the amount of interest due when
payment is made, in addition to the interest due on the unpaid contributions.  (Tashchyan Decl. ¶
17.)  Defendants Films in Motion owes additional liquidated damages accrued since the original
audit report, through April 26, 2018 in the amount of $1,620.40.  (Id.)

Under the CBAs and Trust Agreements, Films in Motion also agreed that in the event of
any delinquency, it would pay attorneys' fees and costs in connection therewith, whether
incurred before or after litigation is commenced.  (Tashchyan Decl. ¶ 18.)

In summary, on the January 20, 2014 audit, Films in Motion owes a total of $8,448.76, comprised of the following amounts, which have been updated to reflect additional interest and liquidated damages that have accrued since the original audit report:

| Category | Original Report | Updated 4/26/18 |
|---|---|---|
| Contributions | $ 3,000.76 | $ 3,000.76 |
| Interest | 1,103.60 | 2,724.00 |
| Liquidated Damages | 1,103.60 | 2,724.00 |
| **Total** | **$ 5,207.96** | **$ 8,448.76** |

(Tashchyan Decl. ¶ 20.)


ii.    "Nothing to Fear"

At all times material herein, Defendants Films in Motion and NTF have been signatories to CBAs and have agreed to be bound by the terms and conditions of the Trust Agreements creating the Plans.  At all times material herein, Defendants Films in Motion and NTF have been obligated to comply with the terms and provisions of the CBAs and Trust Agreements. (Tashchyan Decl. ¶ 21.)

On or about May 11, 2012, Defendants Films in Motion and NTF Productions entered into a Project Agreement with the IATSE that covered a motion picture titled "Nothing to Fear." Under the terms of the Project Agreement, Films in Motion stated that it had "entered into a production agreement with [NTF], an entity in association with Films in Motion, LLC." (Tashchyan Decl. ¶ 22 & Ex. 5.)  Films in Motion acknowledged and confirmed that the motion picture is subject to each of the separate collective bargaining agreements between Films in Motion and the IATSE, including but not limited to: the Producer/I.A.T.S.E. Basic Agreement of 2009; the Trust Acceptance relating to the Producer/I.A.T.S.E. Basic Agreement; the Agreement

of Consent relating to the Producer/I.A.T.S.E. Basic Agreement; the Low Budget Theatrical Agreement 2010-2013.  (Id.)  NTF agreed to be bound by said agreements for the motion picture "Nothing to Fear," and agreed to execute any additional documents reasonably required to fully effectuate the Project Agreement.  (Id.)

On or about May 11, 2012, NTF executed a Trust Acceptance Agreement by which it agreed to be bound by all terms and conditions of the Plans' Trust Agreements and to contribute to the Plans on behalf of each employee covered by the Agreements.  (Tashchyan Decl. ¶ 23 & Ex. 5.)

The Plans conducted a payroll audit of Defendant NTF for the period April 1, 2012 to June 11, 2013.  (Id. ¶ 24.)  The Plans issued an audit report dated September 13, 2013 (the "September 13, 2013 audit") identifying contribution obligations arising from work performed on the project entitled "Nothing to Fear."  (Id. & Ex. 6.)  This report found that $5,902.94 in unpaid contributions was due for work performed by various IA-represented individuals, along with $880.67 in interest, and $1180.36 in liquidated damages.  (Id.)  The Plans also assessed audit fees of $1,440 in connection with the audit.  (Id.)

Despite demand, no payment has been received by the Plans from Films in Motion and NTF.  Therefore, interest on the unpaid contributions has continued to accrue at the rate of one percent (1%) per month as provided in the Trust Agreements.  (Tashchyan Decl. ¶ 25.)  Defendants Films in Motion and NTF jointly and severally owe additional interest calculated at the rate of 1% per month accrued since the original audit report, through April 26, 2018, in the amount of $3,305.69.  (Id.)  In addition, Defendants Films in Motion and NTF jointly and severally owe additional liquidated damages accrued since the original audit report, through April 26, 2018, in the amount of $3,006.00.  (Tashchyan Decl. ¶ 26.)

In summary, on the September 13, 2013 audit, Films in Motion and NTF jointly and severally owe a total of $15,715.66 to the Plans, comprised of the following amounts, which have been updated to reflect additional interest and liquidated damages that have accrued since the original audit report:

| Category | Original Report | Updated 4/26/18 |
|---|---|---|
| Contributions | $ 5,902.94 | $ 5,902.94 |
| Interest | 880.67 | 4,186.36 |
| Liquidated Damages | 1,180.36 | 4,186.36 |
| Audit Cost | 1,440.00 | 1,440.00 |
| **Total** | **$ 9,403.97** | **$ 15,715.66** |

(Tashchyan Decl. ¶ 27.)

iii.    "Carjacked"

At all times material herein, Defendants Films in Motion and Carjacked have been signatories to CBAs and have agreed to be bound by the terms and conditions of the Trust Agreements creating the Plans.  (Tashchyan Decl. ¶ 30.)  At all times material herein, Films in Motion and Carjacked have been obligated to comply with the terms and provisions of the CBAs and Trust Agreements.  (Id.)

On or about December 7, 2010, Defendants Films in Motion and Carjacked Entertainment entered into a Project Agreement with the IATSE that covered a motion picture titled "Carjacked."  (Tashchyan Decl. ¶ 31 & Ex. 7.)  Under the terms of the Project Agreement, Films in Motion stated that it had "entered into a production agreement with [Carjacked], an entity in association with Films in Motion, LLC."  (Id.)  Films in Motion acknowledged and confirmed that the motion picture is subject to each of the separate collective bargaining agreements between Films in Motion and the IATSE, including but not limited to: the Producer/I.A.T.S.E. Basic Agreement of 2009; the Trust Acceptance relating to the

6

Producer/I.A.T.S.E. Basic Agreement; the Agreement of Consent relating to the

Producer/I.A.T.S.E. Basic Agreement; the Low Budget Theatrical Agreement 2010-2013.  (Id.)

Carjacked agreed to be bound by said agreements for the motion picture "Carjacked" and agreed

to execute any additional documents reasonably required to fully effectuate the Project

Agreement.  (Id.)

On or about December 7, 2010, Carjacked executed a Trust Acceptance Agreement by

which it agreed to be bound by all terms and conditions of the Plans' Trust Agreements  and to

contribute to the Plans on behalf of each employee covered by the Agreements.  (Tashchyan Decl.

¶ 32 & Ex. 7.)

The Trust Agreements provide that the Plans may conduct an audit of the books and

records of signatory employers for determining the accuracy of pension and health contributions

to the Plans.  (Tashchyan Decl. ¶ 33.)  The Plans conducted a payroll audit of Defendant

Carjacked for the period November 8, 2010 to August 26, 2011.  The Plans issued an audit report

dated December 31, 2012 (the "December 31, 2012 audit") identifying contribution obligations

arising from work performed on the project entitled "Carjacked."  (Tashchyan Decl. ¶ 33 & Ex.

8.)  This report found that $139.16 in unpaid contributions was due for work performed by

various IA-represented individuals, along with $30.61 in interest, and $30.61 in liquidated

damages.  (Id.)

Defendants Films in Motion and Carjacked have refused, and continue to refuse, to pay

the amounts due for unpaid contributions disclosed by the audit.  (Tashchyan Decl. ¶ 34.)

Despite demand, no payment has been received by the Plans from Films in Motion and

Carjacked.  (Id. ¶ 35.)  Therefore, interest on the unpaid contributions has continued to accrue at

the rate of one percent (1%) per month as provided in the Trust Agreements.  (Id.)  Defendants

Films in Motion and Carjacked jointly and severally owe additional interest calculated at the rate of 1% per month accrued since the original audit report, through April 26, 2018, in the amount of $90.46.  (Id.)  In addition, Defendants Films in Motion and Carjacked jointly and severally owe additional liquidated damages accrued since the original audit report, through April 26, 2018, in the amount of $90.46.  (Id. ¶ 36.)

In summary, on the December 31, 2012 audit, Films in Motion and Carjacked jointly and severally owe the Plans a total of $381.30, comprised of the following amounts, which are updated to reflect additional interest and liquidated damages that have accrued since the original audit report:

| Category | Original Report | Updated 4/26/18 |
|---|---|---|
| Contributions | $ 139.16 | $ 139.16 |
| Interest | 30.61 | 121.07 |
| Liquidated Damages | 30.61 | 121.07 |
| **Total** | **$ 200.38** | **$ 381.30** |

(Tashchyan Decl. ¶ 37.)


iv.   "Bloodout"

At all times material herein, Defendant Films and Bloodout Productions have been signatories to CBAs and have agreed to be bound by the terms and conditions of the Trust Agreements creating the Plans.  (Tashchyan Decl. ¶ 40.)  At all times material herein, Films in Motion and Bloodout have been obligated to comply with the terms and provisions of the CBAs and Trust Agreements.  (Id.)

On or about May 13, 2010, Defendants Films in Motion and Bloodout Productions entered into a Project Agreement with the IATSE that covered a motion picture titled

"Bloodout."  (Tashchyan Decl. ¶ 41 & Ex. 9.)  Under the terms of the Project Agreement, Films in Motion stated that it had "entered into a production agreement with [Bloodout Productions], an entity in association with Films in Motion, LLC."  (Id.)  Films in Motion acknowledged and confirmed that the motion picture is subject to each of the separate collective bargaining agreements between Films in Motion and the IATSE, including but not limited to: the Producer/I.A.T.S.E. Basic Agreement of 2009; the Trust Acceptance relating to the Producer/I.A.T.S.E. Basic Agreement; the Agreement of Consent relating to the Producer/I.A.T.S.E. Basic Agreement; the Low Budget Theatrical Agreement 2010-2013. Bloodout Productions agreed to be bound by said agreements for the motion picture "Bloodout" and agreed to execute any additional documents reasonably required to fully effectuate the Project Agreement.  (Id.)

On or about May 11, 2010, Bloodout executed a Trust Acceptance Agreement by which it agreed to be bound by all terms and conditions of the Plans' Trust Agreements and to contribute to the Plans on behalf of each employee covered by the Agreements.  (Tashchyan Decl. ¶ 42 & Ex. 9.)

The Plans conducted a payroll audit of Bloodout for the period May 7, 2010 to December 25, 2010.  (Tashchyan Decl. ¶ 43 & Ex. 10.)  The Plans issued an audit report dated July 10, 2012 identifying contribution obligations arising from work performed on the project entitled "Bloodout."  (Id.)  This report found that $2,103.85 in unpaid contributions was due for work performed by various IA-represented individuals, along with $231.45 in interest and $420.78 in liquidated damages.  (Id.)  The Plans also assessed audit fees of $585.00 incurred in connection with the audit.  (Id.)

Defendant Films in Motion and Bloodout have refused, and continue to refuse, to pay the amounts due for unpaid contributions disclosed by the audit.  (Id. ¶ 44.)  As noted above, a default judgment is sought only against Films in Motion at this time.  (Id.)

Despite demand, no payment has been received by the Plans from Films in Motion and Bloodout.  (Tashchyan Decl. ¶ 45.)  Therefore, interest on the unpaid contributions has continued to accrue at the rate of one percent (1%) per month as provided in the Trust Agreements.  (Id.)  Defendants Films in Motion and Bloodout jointly and severally owe additional interest calculated at the rate of 1% per month accrued since the original audit report, through April 26, 2018, in the amount of $1,767.23, which is only sought against Films in Motion in this motion.  (Id.)  In addition, Defendants Films in Motion and Bloodout jointly and severally owe additional liquidated damages accrued since the original audit report, through April 26, 2018, in the amount of $1,577.90, which is only sought against Films in Motion in this motion.  (Tashchyan Decl. ¶ 46.)

In summary, in addition to attorneys' fees and court costs incurred to date, with regard to the audit with the audit report dated July 10, 2012, Films in Motion and Bloodout jointly and severally owe the Plans a total of $6,686.21 (which is only sought as against Films in Motion in this motion), comprised of the following amounts, which are updated to reflect additional interest and liquidated damages that have accrued since the original audit report:

| Category | Original Report | Updated 4/26/18 |
|---|---|---|
| Contributions | $ 2,103.85 | $ 2,103.85 |
| Interest | 231.45 | 1,998.68 |
| Liquidated Damages | 420.78 | 1,998.68 |
| Audit Cost | 585.00 | 585.00 |
| **Total** | **$ 3,341.08** | **$ 6,686.21** |

(Tashchyan Decl. ¶ 49.)

## ARGUMENT

**I.     Default Judgment Should Be Granted Pursuant to FRCP 55(b).**

1.   _Default Has Been Entered Under Federal Rule 55(a)._

The Clerk of Court has entered certificates of default against the Defaulting Defendants

under Federal Rule of Civil Procedure 55(a), because they failed to appear, answer, or otherwise

defend this action.  (<u>See</u> Declaration of Gillian Costello, dated July 6, 2018 ("Costello Decl.") ¶¶

13-15, Exs. 7, 8, and 9.)

The Second Circuit has explained the two-step process for obtaining a default judgment

as follows:

> The first step is to obtain a default.  When a party against whom affirmative relief
> is sought has failed to plead or otherwise defend, a plaintiff may bring that fact to
> the court's attention, and Rule 55(a) empowers the clerk of the court to enter a
> default against a party that has not appeared or defended.  Having obtained a
> default, a plaintiff must next seek a judgment by default under Rule 55(b).

<u>New York v. Green</u>, 420 F.3d 99, 104 (2d Cir. 2005).

Judgment by default is now appropriate against the Defaulting Defendants under Federal

Rule 55(b).

2.   _Plaintiffs' Application for Entry of a Default Judgment Under Federal Rule 55(b)_
_Should be Granted._

At all times material herein, the Defendants were under an affirmative duty to pay all

required payroll contributions in a timely manner and in the correct amounts.  They failed to

accurately pay required contributions, as detailed in the audit reports.  The Directors reposed

trust and confidence in the Defendants, and relied on them to accurately report and pay the

correct amount of contributions to the Plans, so as to toll any applicable statute of limitations.

11

In light of the Defaulting Defendants' default, all factual allegations of the Complaint are deemed true and all reasonable inferences should be drawn in Plaintiffs' favor.  See Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009).

## II.    The Court May Determine Damages Without a Hearing.

As a default judgment is appropriate in this action, the Court may award damages based upon Plaintiffs' submissions, including the Complaint, and the Declarations and supporting documentation which Plaintiffs have filed in connection with this motion.

Pursuant to Federal Rule of Civil Procedure 55(b)(2), the Court may conduct a hearing to determine the amount of damages, but "it [is] not necessary for the District Court to hold a hearing, as long as it ensured that there was a basis for the damages specified in the default judgment."  Fustok v. ContinCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989).

As such, a Court may determine damages in a matter on default based upon evidence such as "detailed affidavits and documentary evidence," without the necessity for a hearing. Action S.A. v. Marc Rich & Co., Inc., 951 F.2d 504, 508 (2d Cir. 1991) (stating Rule 55(b)(2) "allows but does not require the district judge to conduct a hearing"); Wang v. Societe Du Figaro S.A., 2018 U.S. Dist. Lexis 13119, at *13-14 (S.D.N.Y. Jan. 26, 2018) (finding that a hearing was not necessary "as documents submitted in this action provide a sufficient basis from which to evaluate the fairness of the damages and other relief requested") (internal quotation marks and citation omitted); Trustees of the Sheet Metal Workers' Int'l Assoc. Local Union No. 28 Benefit Funds v. Metropolis Sheetmetal Contrs., Inc., 2015 U.S. Dist. Lexis 148942, at *6-7 (S.D.N.Y. Aug. 31, 2015) (determining damages without an inquest where plaintiff submitted "sufficient documentary evidence to allow for a computation of damages"), report and recommendation

adopted, 2015 U.S. Dist. Lexis 148932 (S.D.N.Y. Nov. 2, 2015); RLI Ins. Co. v. King Sha

Group, 598 F. Supp. 2d 438, 441 (S.D.N.Y. 2009) (stating "[a]lthough a plaintiff seeking to

recover damages against a defaulting defendant must prove its claims through the submission of

evidence, the Court need not hold a hearing as long as it has (a) determined the proper rule for

calculating damages. . . . and (b) concluded that the plaintiff's evidence establishes, with

reasonable certainty, the basis for the damages specified in the default judgment") (internal

citations omitted); Chloe v. Zarafshan, 2009 U.S. Dist. Lexis 84133, at *3 (S.D.N.Y. July 16,

2009) (relying on factual allegations of the complaint as well as additional declarations filed by

plaintiffs in determining default liability and damages), report and recommendation adopted,

2009 U.S. Dist. Lexis 84255 (S.D.N.Y. Sept. 14, 2009); Estevez-Yalcin v. Children's Vill., 2007

U.S. Dist. Lexis 69511, at *40 (S.D.N.Y. Sept. 12, 2007) (determining that no hearing on

damages was necessary where (1) plaintiffs submitted detailed affidavits from which the court

could assess damages, (2) neither party requested a hearing, and the plaintiffs did not believe that

a hearing was necessary, and (3) defendant had not disputed the plaintiffs' allegations).

 Courts in ERISA cases in the Second Circuit have found that a hearing on damages is

unnecessary where the plaintiff plans' submissions demonstrate that the damages sought,

through plan documents and other documentary evidence.  See, e.g., UFCW Local 174 Pension

Fund v. Int'l Glatt Kosher Meat Processing Corp., 2018 U.S. Dist. Lexis 82734, at *13

(E.D.N.Y. May 15, 2018) (finding that inquest was not necessary in case by brought plans to

collect withdrawal liability contributions where there was sufficient evidence to calculate the

proper damages); Int'l Ass'n of Heat & Frost Insulators v. Affiliated Envtl. Servs. NJ, Inc., 2017

U.S. Dist. Lexis 183909 at *14 (S.D.N.Y. Nov. 6, 2017) (finding inquest on damages not

necessary in ERISA collection action where plaintiffs submitted affidavits, including audit

13

reports and damages statements, and "the appropriate award can be determined based on the papers proffered by [p]laintiffs"); Gesualdi v. Greenwood 2, Inc., 2014 U.S. Dist. Lexis 45795 (E.D.N.Y. Mar. 12, 2014) (determining damages in ERISA collection case without hearing); Upstate N.Y. Eng'rs Health Fund v. FMC Demolition, Inc., 2015 U.S. Dist. Lexis 9524, at *14 (N.D.N.Y. Jan. 28, 2015) (finding that hearing was not necessary in ERISA collection case because "damages are calculable under ERISA, 29 U.S.C. § 1132(g)(2), based upon the detailed affidavits and documentary evidence plaintiffs [benefit funds] have provided").

Here, the evidentiary bases for liability and damages are detailed in the accompanying Declarations of Gillian Costello and Chris Tashchyan and exhibits thereto. The Defendants have not paid the amounts found owing pursuant to the audits. Nor have they appeared or answered or otherwise defended against this lawsuit.


### III.   The Categories of Damages Sought

### a.  Delinquent Contributions

Plaintiffs are entitled to recover the amount of the unpaid contributions owed to the Plans by each of the Defaulting Defendants.

Section 515 of ERISA provides:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145.

Here, the Defaulting Defendants agreed to be bound by the terms of the Plan which obligated them to timely pay contributions on a weekly basis to the Plans for each hour worked by or guaranteed to covered employees. (Taschyan Decl. Exs. 3, 5, 7, 9.)

Under the Plans, contributions that are not timely submitted are considered delinquent.  (Id., Ex. 1 pp 010-014; Ex 2, pp 032.)

Section 502(g)(2)(A) of ERISA provides that in any action to recover unpaid contributions in which a judgment in favor of the plan is awarded, the plan may recover such unpaid contributions.  29 U.S.C. § 1132(g)(2)(A).

The Plans provide that the Directors may audit or cause the audit or inspection of the books and records of any contributing employer insofar as may be necessary to accomplish the purposes of the Plans.  (Taschyan Decl. ¶ 8(B), Ex. 1, pp. 013-014; Ex. 2, p.032.)  The Plans conducted payroll audits that found that contributions were due to the Plans relating to work performed on various motion picture productions.

Plaintiffs are entitled to recover the amount of unpaid contributions owed to the Plans as follows:

- $5,902.94 as to Defendant NTF (Tashchyan Decl. ¶ 27);

- $139.16 as to Defendant Carjacked (id. ¶ 39 ); and

- $11,146.71 total as to Defendant Films in Motion, consisting of:

  - $3,000.76 relating to the audit against Films in Motion alone for various productions (id. ¶ 20);

  - $5,902.94, jointly and severally with NTF (id. ¶ 27),

  - $139.16 jointly and severally with Carjacked (id. ¶ 39); and

  - $2,103.85 jointly and severally with Bloodout, and (id. ¶ 49).

15

### b.  Interest

Plaintiffs are entitled to interest at the rate of 1% per month, or 12% per year, under Section 502(g)(2)(B) of ERISA and the terms of the Plans .  See 29 U.S.C. § 1132(g)(2)(B); Tashchyan Decl. ¶ 8(E) & Ex. 1, p.011, Ex. 2, p.029.

Section 502(g)(2)(B) provides that in an action to recover delinquent contributions in which a judgment in favor of the plan is awarded, "the court shall award the plan--. . . .interest on the unpaid contributions."  The Plans provide that in in the event of a default in the payment of interest, the Plans charge interest at the rate of 1% per month on the amount of contributions owed.  (Tashchyan Decl. ¶ 8(E) & Ex. 1, p.011, Ex. 2, p.029.)

Plaintiffs are entitled to interest on the unpaid contributions owed to the Plans as follows:

- $4,186.36 as to Defendant NTF.  (Tashchyan Decl. ¶ 27 );

- $121.07 as to Defendant Carjacked (id. ¶ 39);

- $9,030.11 total as to Defendant Films in Motion, consisting of:

  - $2,724.00 relating to the audit against Films in Motion alone for various productions (id. ¶ 20);

  - $4,186.36 jointly and severally with NTF (id. ¶ 27);

  - $121.07 jointly and severally with Carjacked (id. ¶ 39); and

  - $1,998.68 jointly and severally with Bloodout (id. ¶ 49).

### c.  Liquidated Damages

Plaintiffs are entitled to liquidated damages under Section 502(g)(2)(C) and the terms of the Plans documents.  <u>See</u> 29 U.S.C. § 1132(g)(2)(C); Tashchyan Decl. ¶ 8(F), Ex. 1, pp.11-12, Ex. 2, pp.029-030.

Section 502(g)(2)(C) provides that in an action to recover delinquent contributions in which a judgment in favor of the plan is awarded, "the court shall award the plan":

an amount equal to the greater of—

(i)     interest on the unpaid contributions, or
(ii)    liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A) [unpaid contributions.]

<u>Id.</u>

Here, Plaintiffs are entitled to liquidated damages as follows:

- $4,186.36 as to Defendant NTF.  (Tashchyan Decl. ¶ 27 );

- $121.07 as to Defendant Carjacked (<u>id.</u> ¶ 39);

- $9,030.11 total as to Defendant Films in Motion, consisting of:

   o  $2,724.00 relating to the audit against Films in Motion alone for various productions (<u>id.</u> ¶ 20);

   o  $4,186.36 jointly and severally with NTF (<u>id.</u> ¶ 27);

   o  $121.07 jointly and severally with Carjacked (<u>id.</u> ¶ 39); and

   o  $1,998.68 jointly and severally with Bloodout (<u>id.</u> ¶ 49).

### d.  Costs and Attorneys' Fees

Plaintiffs are entitled to recover their reasonable attorneys' fees under Section

502(g)(2)(D) of ERISA, 29 U.S.C. § 1132(g)(2)(D), and the terms of the Plans (see Tashchyan

Decl. ¶ 8(D), Ex. pp. 012, Ex. 2, p.030).

Section 502(g)(2)(D) provides:

> In any action . . . by a fiduciary for or on behalf of a plan to enforce section 1145
> of this title in which a judgment in favor of the plan is awarded, the court shall
> award the plan—
>               ***
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant.

29 U.S.C. § 1132(g)(2)(D).

"As is apparent from the statutory text, an award of attorney fees and costs is . . .

mandatory under subsection (2) of section 1132(g)."  N.Y. State Teamsters Conference Pension

& Ret. Fund v. Boening Bros., Inc., 92 F.3d 127, 135 (2d Cir. 1996).

Plaintiffs also seeks $16,755.00 in attorneys' fees and $1,202.13 in costs incurred by

Plaintiffs to date in the action, pursuant to ERISA Section 502(g)(2)(D), 29 U.S.C. § 1132(g)(2)(D)

and the Plan documents.  (Costello Decl. ¶¶ 21-27 & Exs. 10-12.)

"Both [the Second Circuit] and the Supreme Court have held that the lodestar— the product

of a reasonable hourly rate and the reasonable number of hours required by the case — creates a

'presumptively reasonable fee.'"  Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011)

(quoting Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 182, 183

(2d Cir. 2008), and citing Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 552-53, 130 S. Ct. 1662

(2010)).

A "reasonable hourly rate" is the "rate a paying client would be willing to pay."  Arbor

Hills, 522 F.3d at 190.  It is "a rate 'in line with . . . prevailing [rates] in the community for

similar services by lawyers of reasonably comparable skill, expertise and reputation.'" N.Y.
Dist. Council of Carpenters Pension Fund v. Perimeter Interiors, Inc., 657 F. Supp.2d 410, 424
(S.D.N.Y. 2009) (quoting Blum v. Stenson, 465 U.S. 886, 895 n.11, 104 S. Ct. 1541 (1984)).
"The actual billing arrangement certainly provides a strong indication of what private parties
believe is the 'reasonable fee' to be awarded." Crescent Publ'g Grp., Inc. v. Playboy Enters.,
Inc., 246 F.3d 142, 151 (2d Cir. 2001). "As numerous courts have recognized, negotiations and
payment of fees by sophisticated clients are solid evidence of their reasonableness in the
market." Bleecker Charles Co. v. 350 Bleecker St. Apt. Corp., 212 F. Supp. 2d 226, 230
(S.D.N.Y. 2002). See also SEC v. Yorkville Advisors, LLC, 2015 U.S. Dist. LEXIS 24578, at *46
(S.D.N.Y. Feb. 27, 2015) (stating "the actual fee arrangement between a party and its counsel is
relevant evidence of what constitutes a 'reasonable fee'"). Here, the Plans paid the requested fees at
the customary rates under the billing arrangement with the Plans' law firms. (See Costello Decl. ¶
23.)

　　　In addition, courts in this District have approved similar or higher rates in ERISA cases
for attorneys with comparable or less experience than that of the Plans' attorneys in this case.
See, e.g., Demonchaux v. United Healthcare Oxford, 2014 U.S. Dist. LEXIS 43954, at *19
(S.D.N.Y. Mar. 27, 2014) (approving hourly rates of $600 for partners and $500 for experienced
senior associates in ERISA benefits case); Taaffe v. Life Ins. Co., 769 F. Supp.2d 530, 542-43
(S.D.N.Y. 2011) (approving rate of $560 per hour for experienced attorney in ERISA case);
Barnes v. Am. Int'l Life Assurance Co., 2010 U.S. Dist. LEXIS 27606, at *6-8 (S.D.N.Y. Mar.
16, 2010) (approving rate of $495 for experienced partner in ERISA case); Clark v. First Unum
Life Ins. Co., 2009 U.S. Dist. LEXIS 36054, at *9-10 (S.D.N.Y. April 28, 2009) (stating that rate of
$480 per hour for ERISA attorney with 24 years of experience was "commensurate with market

19

rates"); Alfano v. CIGNA Life Ins. Co. of N.Y., 2009 U.S. Dist. LEXIS 28118, at *8-10 (S.D.N.Y.

April 2, 2009) (in ERISA long-term disability benefits case, applying hourly rate of $450 for

experienced attorney); Arnone v. CA, Inc., 2009 U.S. Dist. LEXIS 17080, at *10 (S.D.N.Y. Mar. 6,

2009) (approving hourly rates of $450 and $425 for experienced attorneys in ERISA case);

Perimeter Interiors, Inc., 657 F. Supp.2d at 424 (approving rates of $425 per hour for partners in

an ERISA case); N.Y.C. Dist. Council of Carpenters Welfare Fund v. Quantum Constr., 2008

U.S. Dist. LEXIS 124690, at *23-24 (S.D.N.Y. Sept. 4, 2008) (awarding, in case decided 8 years

ago, $425 per hour for partner time in entry of a default judgment in ERISA collection action),

adopted in relevant part sub nom. N.Y.C. Dist. Council of Carpenters Pension Fund v. Quantum

Constr., 2008 U.S. Dist. LEXIS 99179 (S.D.N.Y. Dec. 9, 2008).

　　　　In some of the cases above, equivalent or higher rates than those sought here were

awarded five or more years ago.  In determining what is reasonable, "hourly rates should be

'current rather than historic.'"  Underdog Trucking, L.L.C. v. Verizon Servs. Corp., 276 F.R.D.

105, 108 (S.D.N.Y. 2011) (quoting Reiter v. MTA N.Y.C. Transit Auth., 457 F.3d 224, 232 (2d

Cir. 2006)).  One can reasonably expect that higher rates would be approved today for the work

in the above-cited cases.  Cf. Microban Prods. Co. v. API Indus., 2014 U.S. Dist. LEXIS 92704,

at *7 (S.D.N.Y. July 7, 2014) (in copyright case, noting rates approved several years ago by

other courts in the district, and stating "in general, fees and expenses have risen in the interim")

(internal quotation marks and citation omitted).

　　　　Furthermore, the number of hours expended on this case is reasonable.  Plaintiffs seek

fees totaling $12,255.00 for 52.5 total hours of attorney and paralegal time performed by Bush

Gottlieb and fees totaling $4,500 for 10 total hours of attorney time performed by Spivak Lipton

on this matter.  (Costello Decl. ¶¶ 24, 25.)  This case is essentially four cases in one.  It involves

four separate audits by the Plans covering more than four motion picture productions.  By combining the cases in one lawsuit, Plaintiffs have sought to more efficiently collect the unpaid contributions and other amounts owed by the Defendants.  Nevertheless, the hours expended on this matter are more than a standard ERISA collection case involving a single delinquent employer, because there are multiple parties, agreements, and audits at issue.  (Costello Decl. ¶ 28.)

In addition, the complex interrelationships between the parties has increased the amount of time expended on this collection matter.  Defendant Films in Motion was the common denominator in all of the projects involved in the case.  Nevertheless, for a number of the productions, Films in Motion entered into agreements with producer entities to produce the motion pictures, which increased the number of parties involved.  As a result, the complexity of the matter was increased because there were multiple documents binding the various parties, as opposed to a standard ERISA case where there are fewer, often more straightforward, applicable documents.  (Costello Decl. ¶ 29.)

Increased time was also expended as a result of the difficulties with service of process that arose from the Defendants' multiple, outdated addresses (which remained outdated on the official web site of the Louisiana Secretary of State), such as time researching public records to determine the companies' locations, communicating with the process servers regarding the difficulties in locating the Defendants, and communicating with the Court regarding the status of service and court hearings.  With four Defendants that seem to move frequently or disappear, additional time was expended with each filing, sending and re-sending communications and attempting to locate the parties.  (Costello Decl. ¶ 30.)

## **CONCLUSION**

For the foregoing reasons, Plaintiffs' motion for a default judgment should be granted,

awarding Plaintiffs damages in the amounts set forth in Plaintiffs' supporting papers.


Dated: New York, New York                    Respectfully submitted,
      July 6, 2018

                                                 _____/s/_____
                                                 Gillian Costello
                                                 SPIVAK LIPTON LLP
                                                 1700 Broadway, 21st Floor
                                                 New York, NY 10019
                                                 Tel:  (212) 765-2100
                                                 Fax:  (212) 765-8954
                                                 *Attorneys For Plaintiffs*